# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

TIMOTHY R. LOCKABY, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-328-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Timothy R. Lockaby (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 18, 1962 and was 49 years old at the time of the ALJ's latest decision. Claimant completed his high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning March 23, 2000 due to limitations resulting from degenerative disc disease, bilateral

osteoarthritis of the knees, diabetes mellitus, and obesity.

## Procedural History

On September 7, 2007, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 11, 2009, a video administrative hearing was held before ALJ Charles Headrick in McAlester, Oklahoma. On April 21, 2009, the ALJ issued an unfavorable decision on Claimant's application. On February 22, 2010, the Appeals Council denied review of the ALJ's decision. On October 14, 2010, the decision was reversed by this Court and remanded to Defendant for further proceedings.

In the interim, Plaintiff filed a second application for SSI benefits alleging an onset date of April 22, 2009. A hearing was held on this claim on July 28, 2010 before ALJ Osly Deramus. On August 26, 2010, the ALJ issued an unfavorable decision on this second claim. When the appeal was taken to the Appeals Council, the first claim was merged with this second claim and the merged claims were remanded by the Appeals Council when this Court remanded the first decision.

A hearing on both claims was conducted by ALJ Deramus in McAlester, Oklahoma on May 11, 2011. On July 19, 2011, the ALJ

issued an unfavorable decision. A direct appeal was taken to this Court. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of light work with limitations. The ALJ applied the grids in making a finding of non-disability.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) engaging in an improper credibility analysis; and (2) failing to include all of Claimant's limitations in the ALJ's RFC assessment.

### Credibility Analysis

Claimant contends the ALJ failed to properly evaluate his credibility. In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc of the lumbar spine status post fusion, bilateral osteoarthritis of the knees, diabetes mellitus with neurological manifestations, and obesity. (Tr. 452). The ALJ concluded, however, that Claimant retained the

RFC to lift and/or carry at least ten pounds occasionally and at least ten pounds frequently, to stand and/or walk for at least two hours during an eight hour workday, and to sit for at least six hours during an eight hour workday. He also determined Claimant could occasionally stoop and balance but never crouch, crawl, or kneel. Claimant was also found to occasionally climb stairs but never climb ladders. (Tr. 457).

Claimant's physical problems began in March of 2000 when he fell and herniated two discs in his lumbar spine at L4-5 and L5-S1 with significant stenosis. (Tr. 156). On January 22, 2001, Claimant underwent a diskectomy and a posterior lobar interbody fusion at L4-5 and L5-S1 with Brantagan cages and posterior spinal fusion with instrumentation, segmental, and iliac crest bone graft, right. (Tr. 149-51).

On November 7, 2007, Claimant reported chronic pain in his knees. X-rays revealed moderate narrowing of the medial side of the femoral tibial joint and small osteophytes at the intertibial spines of the tibia and intercondylar notch of the femur. Small osteophytes were noted at the posterior margins of the patella. On the left knee, the diagnosis was a bipartite patella, osteoarthritis of the medial joint compartment, and small osteophytes of the lateral intertibial spine. For the right knee,

the diagnosis was osteoarthritis of the medial joint compartment and multiple osteophytes. (Tr. 439, 441).

On October 13, 2007, Claimant underwent a consultative physical examination by Dr. David Wiegman. Dr. Wiegman found Claimant to have normal arm and leg strength, normal grip strength, and normal arm and leg range of motion. Claimant experienced some pain on strength testing of his upper extremities in his back. Dr. Wiegman noted decreased range of motion in Claimant's back with only about 60 degrees of flexion, 10 degrees of extension, and 10 degrees of flexion to the left and right. Claimant had pain with all movements of his back. Claimant had normal range of motion in his neck. Dr. Wiegman also found no joint swelling, erythema, effusion, or deformities. (Tr. 160). Dr. Wiegman found Claimant had an antalgic gait and experienced difficulty walking on his toes and heels separately but did fairly well walking heel to toe. Claimant appeared to have good coordination with normal opposition of the thumb to fingers. Dr. Wiegman's conclusion was chronic back pain status post injury and surgery with a re-injury. Claimant had problems with walking, standing, and lifting with the noted decreased range of motion and pain. (Tr. 161).

On October 17, 2007, Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment form on Claimant. He found

Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and unlimited pushing and pulling. (Tr. 167). Dr. Woodcock also limited Claimant to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 168).

With regard to Claimant's credibility, the ALJ recited Claimant's testimony that he lives with his father, has been instructed not to lift more than 10 pounds, has frequent urination due to medication, can stand for 15-20 minutes and sit for 15-20 minutes, experiences sleep disturbance due to medication and naps during the day, experiences problems with his knees, checks on cattle with his father and helps shop for groceries. Claimant also testified he experiences pain of 4 out of 10 with medication, has unbearable muscle spasms, does not shower or shave on a bad day, experiences two good days out of seven, sleeps intermittently, cannot lift a gallon of milk, has been diagnosed with asthma and diabetes, and experiences neuropathy in his legs that keeps him up at night. (Tr. 458-59).

The ALJ found Claimant's testimony as to the intensity, persistence and limiting effects of his symptoms are not credible. The ALJ cited to the reports of Dr. Wiegman, Dr. Ryan Aldrich and

8

numerous physicians and consultants which conflict with the level of limitation to which Claimant testified. (Tr. 459-62).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must

be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ sufficiently tied his findings on credibility to the objective medical record. Accordingly, no error is found in his credibility determination.

## RFC Determination

Claimant asserts the ALJ failed to include all of his limitations in the RFC assessment. Claimant identifies the condition of sitting no more than 15-20 minutes, standing and/or walking no more than 15-20 minutes, lifting no more than 10 pounds, the necessity to take unscheduled breaks, need for naps, need to lie down and elevate his lower extremities, accommodation for frequent urination and the need to be absent one day per week due to pain. All of these "limitations", however, find their foundation in Claimant's testimony rather than findings by medical professionals - testimony found to be less than credible by the ALJ. The findings of limitation made by a physician was the lifting limitation, need to lie down, and need to take breaks. These restrictions were imposed in 2001 shortly after his fusion surgery. Physicians subsequently examining Claimant did not impose such limitations. Moreover, the ALJ's RFC accommodates such

lifting restrictions. (Tr. 457). This Court can attribute no error to the failure of the ALJ to impose the limitations urged by Claimant.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of January, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE